| | | |
|---|---|---|
| **UNITED STATES DISTRICT COURT** | | **EASTERN DISTRICT OF TEXAS** |

| | | |
|---|---|---|
| CHARLES JUSTUS COOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:25-CV-274 |
| | § | |
| NICK DENNIS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Nick Dennis's ("Dennis") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (#8), wherein Dennis asks the court to dismiss the present action for failure to state a claim. Plaintiff Charles Justus Cook ("J. Cook") filed a Response in Opposition (#14), which contained, in the alternative, a Motion for Leave to Amend his Complaint. Dennis filed a Reply (#15), and J. Cook filed a Sur-Reply (#20). Having considered the pending motions, the submissions of the parties, the record, and the applicable law, the court is of the opinion that Dennis's motion to dismiss and J. Cook's Motion for Leave to Amend should both be GRANTED.

I.    Background

The present lawsuit arises out of J. Cook's employment as a member of the Information Technology ("IT") Department of Liberty County, Texas. According to J. Cook's Original Petition (#2), Dennis served as the Director of Technology for Liberty County, and he hired and supervised J. Cook during his employment with the IT Department. Once hired, J. Cook's employment seemingly proceeded without incident for approximately eleven months. As part of his employment, J. Cook provided technological services to various departments of the Liberty

County Government.  In December 2022, however, Dennis informed J. Cook that the Liberty County District Attorney's Office (the "D.A.'s Office") requested that J. Cook no longer work in the department.  Though not explicitly stated, it appears the request that J. Cook no longer conduct work for the D.A.'s Office stemmed from his indirect association with Klint Bush ("Bush"), an individual whom the office was prosecuting.  Bush, who served as the Chairman of the Liberty County Housing Authority ("LCHA"), was arrested on charges relating to his conduct with respect to the LCHA.  J. Cook's wife, Emily Cook ("E. Cook"), is a former commissioner for the LCHA.  Although J. Cook was prohibited from performing work for the D.A.'s Office, he continued to complete his normal duties for the Liberty County IT Department and remained eligible to work in any of the remaining Liberty County departments.

In light of Bush's arrest, the Liberty County Elections Commission held a public meeting on February 13, 2023, to decide whether Bush should continue in his role as the county's elections administrator.[1]  As the Chairwoman for the Liberty County Republican Party, J. Cook's wife, E. Cook, was a statutory voting member of the Liberty County Elections Commission.  On the day of the meeting, J. Cook asked Dennis if he could leave work early to watch his children while his wife prepared for the meeting.  According to J. Cook, he left work at 3:00 p.m. to watch his children and subsequently accompanied E. Cook to the courthouse to attend the public meeting at 4:00 p.m.  Dennis also attended the meeting in an official capacity to provide technological assistance if the live stream of the meeting were to encounter problems.  The next day, Dennis allegedly informed J. Cook that the "next time you go to 'court' you need to tell me."  According

---

[1] Bush appears to have held multiple positions within the Liberty County Government.

to J. Cook, Dennis's statement gave him the impression that his presence at the meeting was viewed unfavorably and that his employment was in jeopardy as a result.

Approximately three months later, on May 9, 2023, Dennis terminated J. Cook's employment with Liberty County.  Though Dennis cited multiple reasons for the termination, it appears the final straw occurred on May 8, 2023, when J. Cook left work around 3:00 p.m. to pick up his son from school.  J. Cook then allegedly used his work badge for a personal matter by swiping it to enter the Liberty County Sheriff's Office to meet his wife, who was attending a meeting with the Sheriff of Liberty County.[2]  Dennis responded to an email sent by E. Cook, stating that the reasons for J. Cook's termination included:

(1)    his attendance at the public meeting on February 13, 2023;

(2)    the use of his badge for a personal matter on May 8, 2023; and

(3)    the fact that multiple departments within Liberty County had requested that J. Cook no longer conduct work for them.

According to J. Cook, he was never made aware that any department other than the D.A.'s Office had requested he no longer conduct work for them.  Moreover, an open records request for copies of all written communications from any department head asking Dennis not to allow J. Cook into their departments revealed that no such records existed.

On May 9, 2025, J. Cook filed his Original Petition (#2) in the 75th District Court of Liberty County, Texas, asserting claims under 42 U.S.C. § 1983.  Specifically, J. Cook contends Dennis violated his First Amendment rights by terminating him in retaliation for his attendance

---

[2] J.Cook asserts that Dennis assumed he used his badge for a personal matter.  Although J. Cook does not definitively contradict Dennis's assertion that he used his badge for a personal matter, he states that he could have also feasibly been conducting work at the Liberty County Sheriff's Office, as he had worked in that office earlier the same day.

at the meeting on February 13, 2023, as a member of the local Republican Party, and his association with the Republican Party Chairwoman.  On June 6, 2025, Dennis removed the case to the Eastern District of Texas, Beaumont Division, on the basis of Federal Question Jurisdiction. Dennis subsequently filed the pending Motion to Dismiss (#8), asking the court to dismiss the case on the grounds that J.Cook failed to state a claim sufficient to overcome his entitlement to qualified immunity as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

II.    Analysis

A.    Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)).  Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *accord Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019).  In

ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024), *cert. denied sub nom. Benfer v. Baytown*, No. 24-823, 2025 WL 663718 (U.S. Mar. 3, 2025); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)). The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021); *see Damond*, 127 F.4th at 938 ("A claim is . . . frivolous when it 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *Damond*, 127 F.4th at 938; *Ramming*, 281 F.3d at 161. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Cambric v. City of Corpus Christi*, ___ F.4th___ No. 25-40126, 2026 WL 709200, at *1 (5th Cir. Mar. 13, 2026); *Doe as Next Friend Doe v. Jewel*, 151 F.4th 236, 244 (5th Cir. 2025); *Willis v. W. Power Sports, Inc.*, No. 23-10687, 2024 WL 448354, at *1 (5th Cir. Feb. 6, 2024); *Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*,

46 F.4th 344, 355 (5th Cir. 2022).  "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355. Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'"  *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Damond*, 127 F.4th at 937-38 (noting that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)); *King*, 46 F.4th at 355.

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.  *Twombly*, 550 U.S. at 555.  Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *accord Damond*, 127 F.4th at 937; *Benfer*, 120 F.4th at 1279; *King*, 46 F.4th at 355; *IberiaBank Corp.*, 953 F.3d at 345 (quoting *Iqbal*, 556 U.S. at 678); *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015).  "Facial plausibility is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Benfer*, 120 F.4th at 1279 (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021)); *Damond*, 127 F.4th at 937; *accord Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023); *King*, 46 F.4th at 355-56.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Walker*, 938 F.3d at 735 (quoting

*Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356.  "Factual allegations that are 'merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Walker*, 938 F.3d at 735.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord Damond*, 127 F.4th at 938 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002))); *King*, 46 F.4th at 356 ("[C]ourts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Shaw*, 918 F.3d at 419.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Wells v. Tex. Tech Univ.*, No. 24-10518, 2025 WL 673439, at *2 (5th Cir. Mar. 3, 2025); *Shaw*, 918 F.3d at 419.  In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410; *see Walker*, 938 F.3d at 734 (quoting *Grubbs*, 565 F.3d at 186).  Generally, at the 12(b)(6) stage, a plaintiff is simply required to inform the defendant of the factual basis of his complaint in order to avoid dismissal for failure to state a claim.  *See Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014) (citing FED. R. CIV. P. 8(a)(2)); *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016).

B.       Consideration of Attachments

Generally, in ruling on a Rule 12(b)(6) motion, the court may only consider the allegations in the complaint and any attachments thereto.  *See Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 n.4 (5th Cir. 2026); *Sexton v. Rollins*, No. 24-20296, 2025 WL 141412, at *1 (5th Cir. May 15, 2025).  The rationale is that the consideration of external evidence essentially converts the motion to dismiss into a motion for summary judgment.  *Rodriguez v. Duffy*, No. 24-40635, 2025 WL 1218348, at *1 (5th Cir. Apr. 28, 2025).  The court may, however, consider documents a defendant attaches to its motion to dismiss if the documents are referenced in the plaintiff's complaint and are central to the plaintiff's claims.  *Ware v. Irving Place Assocs., L.P.*, No. 25-30252, 2025 WL 3022311, at *2 n.6 (5th Cir. Oct. 29, 2025).  Additionally, the court may take judicial notice of matters of public record.  *Jenkins*, 151 F.4th at 747; *Robertson v. Trueaccord Corp.*, 4:25-CV-2816, 2026 WL 678769, at *2 (S.D. Tex. Feb. 19, 2026).

Here, Dennis asks the court to consider two documents attached to the pending motion to dismiss.  The first document, attached as Exhibit A to Dennis's Motion to Dismiss (#8-1), is an email exchange between E. Cook and Dennis.  The first email contained in Exhibit A was sent by E. Cook on the day J. Cook was terminated.  E. Cook's email reflects her account of the events leading up to her husband's termination.  In her email, E. Cook suggests that J. Cook's termination was motivated by reasons other than his job performance.  In response, Dennis sent an email explaining the reasons for J. Cook's termination.  Dennis's response contained multiple reasons for the termination, but among the reasons listed was J. Cook's attendance at the meeting on February 13, 2023.  According to Dennis, he felt it was dishonest for J. Cook to request time off to care for his children when he was not watching his children, but instead was planning to

attend the public meeting.  E. Cook responded to Dennis's email, explaining that J. Cook had intended to watch the children.  He decided, however, to attend the meeting when someone from their church offered to watch their children because he wanted to support his wife following the filing of a public motion by the D.A.'s Office that alleged E. Cook was pregnant with another person's (not her husband's) child.

Dennis asserts that the court may consider Exhibit A because it contains an email referenced by J. Cook in his petition and the email exchange is central to his claims.  The court agrees that at least one of the three emails in Exhibit A, namely Dennis's email explaining the reasons for J. Cook's termination, is referenced in his Original Petition (#2) and is central to his claims.  In his petition, J. Cook references Dennis's email as evidence of Dennis's retaliatory intent because Dennis stated that J. Cook's attendance at the public meeting played a role in his decision to terminate J. Cook's employment.  The petition does not, however, reference or rely on the emails sent by E. Cook.  Consequently, the court will consider Exhibit A only to the extent it contains the email from Dennis that is referenced and relied on by J. Cook in asserting his claims under § 1983.  *Carter v. Target Corp.*, F. App'x 413, 418 n.2 (5th Cir. 2013) (recognizing that the court may only consider those portions of an attachment that are referenced by and central to plaintiff's complaint).  Therefore, the court will not consider E. Cook's emails contained in Exhibit A.

The second document attached to Dennis's Motion to Dismiss (#8) contains the minutes of the public meeting held before the Liberty County Elections Commission on February 13, 2023.  Dennis maintains that the minutes are a public record of which the court can take judicial notice.

The court agrees. *See Jenkins*, 151 F.4th at 747. Accordingly, the court will consider the minutes attached as Exhibit B to Dennis's Motion to Dismiss (#8-2).

C.    Qualified Immunity

In claims against state and local government officials under 42 U.S.C. § 1983, the official may raise the affirmative defense of qualified immunity. *Stevenson v. Tocé*, 113 F.4th 494, 501 (5th Cir. 2024); *Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020); *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). To establish liability against an official in his personal capacity under § 1983, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Hernandez v. Causey*, 124 F.4th 325, 334 (5th Cir. 2024); *Hall v. Trochessett*, 105 F.4th 335, 340 (5th Cir. 2024); *Hitt v. McLane*, 854 F. App'x 591, 594 (5th Cir. 2021) (quoting *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009)).

Qualified immunity is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Clark v. Dep't of Pub. Safety & Corrs.*, 141 F.4th 653, 658 n.2 (5th Cir. 2025); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016); *Hinojosa v. Livingston,* 807 F.3d 657, 663 (5th Cir. 2015); *see Cole v. Carson*, 935 F.3d 444, 446 (5th Cir. 2019) ("The doctrine protects at the earliest stage of litigation at which the defense's application is determinable."). "[I]t protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *accord White v. Pauly*, 580 U.S. 73, 77-79 (2017); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020); *Joseph*, 981 F.3d at 337; *Cleveland*, 938 F.3d at 675. "Qualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231; *see Joseph*, 981 F.3d at 328; *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix*, 577 U.S. at 11 (quoting *Pearson*, 555 U.S. at 231); *accord White*, 580 U.S. at 79; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mendez v. Poitevant*, 823 F.3d 326, 331 (5th Cir. 2016); *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). "[O]nce properly raised by the defendant, the plaintiff has the burden to negate the assertion of qualified immunity." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016); *see Joseph*, 981 F.3d at 328; *Cleveland*, 938 F.3d at 675.

"To properly raise a qualified immunity defense, '[t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority.'" *Holcomb v. McCraw*, 262 F. Supp. 3d 437, 446 (W.D. Tex. 2017) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)); *see Cherry Knoll, L.L.C. v. Jones,* 922 F.3d 309, 318 (5th Cir. 2019). "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Cherry Knoll, L.L.C.*, 922 F.3d at 318 (quoting *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)); *see Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004). In this situation, Dennis's actions were not taken pursuant to "specific orders, or spelled out in minute detail

beforehand." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1092 (5th Cir. 1997); *see Beltran*, 367 F.3d at 303-04. Instead, his decision to terminate J. Cook's employment fell within the realm of discretionary decisions taken within the scope of his official duties. *See Tamez*, 118 F.3d at 1092; *see also Beltran*, 367 F.3d at 303-04.

"Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised." *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025) (quoting *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012)); *see Cunningham*, 983 F.3d at 191. "A plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown*, 243 F.3d at 190. At the motion to dismiss stage, the plaintiff must "plead facts which, if proved, would defeat the claim of immunity." *Carmona*, 126 F.4th at 1096 (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)).

More specifically, a plaintiff seeking to overcome qualified immunity must plead facts establishing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 758 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *accord Cunningham*, 983 F.3d at 191; *Est. of Bonilla v. Orange County*, 982 F.3d 298, 306 (5th Cir. 2020); *see District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018); *Cleveland*, 938 F.3d at 675-76; *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) ("[C]ourts will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" (quoting *Ashcroft*, 563 U.S. at 741)). Thus, an official is entitled to qualified immunity if there is no violation, or if the conduct did not violate law "'clearly established' at the time." *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014); *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). "If the plaintiff

12

fails at either step, the federal court can grant qualified immunity by addressing either step or both of them." *Cleveland*, 938 F.3d at 676; *see Pearson*, 555 U.S. at 232; *Est. of Bonilla*, 982 F.3d at 306; *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

"The first prong of qualified immunity requires the plaintiff to allege 'the deprivation of an *actual* constitutional right.'" *Hampton*, 480 F.3d at 363 (quoting *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *see Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016).  Hence, the court must "assess whether a statutory or constitutional right would have been violated on the facts alleged." *Griggs*, 841 F.3d at 308 (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)); *accord Haverda v. Hays County*, 723 F.3d 586, 598 (5th Cir. 2013) (citing *Lytle v. Bexar County*, 560 F.3d 404, 409-10 (5th Cir. 2009).

The second prong of qualified immunity requires the plaintiff to demonstrate that the right that was purportedly violated was a clearly established right at the time of the challenged conduct. *Carmona*, 126 F.4th at 1091.  "[A] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see Wesby*, 583 U.S. at 63; *Brosseau*, 543 U.S. at 198-99.  As the Supreme Court of the United States has stated, "[w]hile this Court's case law 'does not require a case directly on point for' a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White*, 580 U.S. at 79 (quoting *Mullenix*, 577 U.S. at 12); *see Wesby*, 583 U.S. at 63; *Cunningham*, 983 F.3d at 191.  In other words, "the clearly established law must be 'particularized' to the facts of the case," and "should not be defined 'at a high level of

13

generality.'" *White*, 580 U.S. at 79 (citing *al-Kidd*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see Wesby*, 583 U.S. at 64 ("A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that the rule was firmly established.'" (quoting *Anderson*, 483 U.S. at 641)); *Cunningham*, 983 F.3d at 191; *Cass*, 814 F.3d at 733 (finding a general statement that "citizens are protected against unjust, excessive police force" insufficient to show that the law was clearly established). "Caselaw from this circuit (and, of course, from the Supreme Court) is the best way to determine whether a right was clearly established." *Graves v. Zachary*, 277 F. App'x 344, 348 n.4 (5th Cir. 2008).

Thus, "the salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan*, 572 U.S. at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see White*, 580 U.S. at 79-80 ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but in light of pre-existing law the unlawfulness must be apparent"); *Dyer*, 964 F.3d at 383; *Cass*, 814 F. 3d at 728.

In the present case, the court is of the opinion that J. Cook has failed to allege facts establishing that Dennis violated a clearly established constitutional right. In his Original Petition (#2), J. Cook alleges Dennis violated his First Amendment rights to free speech, peaceable assembly, association, and to petition the government for redress of grievances by terminating his employment in retaliation for his attendance at the public Elections Commission meeting and his association with the Republican Party Chairwoman. Accordingly, the court must determine whether J. Cook's conduct was clearly protected by any of the aforementioned rights.

1.      Right to Free Speech

J. Cook alleges that Dennis's actions violated his clearly established right to free speech guaranteed under the First Amendment to the United States Constitution. *See* U.S. CONST. amend. I. "The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976); *see Bigelow v. Virginia*, 421 U.S. 809, 811 (1975); *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 414 n.1 (5th Cir. 2014). As the Supreme Court has stated, "[s]peech by citizens on matters of public concern lies at the heart of the First Amendment," and "public employees do not renounce their citizenship when they accept employment." *Lane v. Franks*, 573 U.S. 228, 235-36 (2014). Thus, it is well established that a public employee may not be discharged, disciplined, or punished for exercising the right to free speech. *Rankin v. McPherson*, 483 U.S. 378, 383 (1987); *Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988).

If a plaintiff was not acting as a public employee when he engaged in the alleged free speech, then his claims are evaluated like those of a private citizen. For a private citizen to prevail on a claim of retaliation under the First Amendment, he must show:

(1)     he was engaged in a constitutionally protected activity;

(2)     the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and

(3)     the defendants' adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected conduct.

15

*Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)); *Villarreal v. City of Laredo*, 44 F.4th 363, 373 (5th Cir. 2022); *Culbertson*, 790 F.3d at 618.

Here, J. Cook alleges he engaged in a constitutionally protected activity, namely constitutionally protected speech, by attending the public meeting.  The parties seemingly agree that J. Cook did not engage in literal speech.  Rather, J. Cook asserts that, by attending the public meeting, he engaged in expressive conduct that amounts to speech or expression that is protected by the First Amendment.  The Supreme Court of the United States has noted that "'Speech,' as that term is used in our First Amendment Jurisprudence, refers to expressive activity that is 'intended to be communicative' and, 'in context, would reasonably be understood . . . to be communicative.'" *Shurtleff v. City of Boston*, 586 U.S. 243, 267 (2022) (Alito, J., concurring) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984)); *Masterpiece Cakeshop v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 657 (2018) (Thomas, J., concurring); *see Imperial Sovereign Ct. of Mont. v. Knudsen*, ___ F.4th ___, No. 23-3581, 2026 WL 708218, at *13 (9th Cir. Mar. 13, 2026); *Jordan v. Ector County*, 516 F.3d 290, 296 (5th Cir. 2008) ("Speech, as we have come to understand that word when used in our First Amendment jurisprudence, extends to many activities that are by their very nature nonverbal.").

"Conduct intending to express an idea is constitutionally protected only if it is 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Imperial Sovereign Ct. of Mont.*, 2026 WL 708218, at *13 (quoting *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir. 2010)).  Conduct, however, that does not convey a message without the aid of additional speech receives no First Amendment protection.

*The Bail Project, Inc. v. Comm'nr, Ind. Dep't of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023). Specifically, the Supreme Court has rejected the view that conduct can, as a matter of course, "be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Rumsfeld v. F. for Acad. and Inst. Rts., Inc.*, 547 U.S. 47, 65-66 (2006) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).  Instead, First Amendment protection extends only to "conduct that is inherently expressive." *Id.*  Courts have recognized many types of inherently expressive conduct, including burning the American flag, burning a cross, saluting a flag, wearing an armband to protest war, displaying a flag that opposes the government, and nude dancing as entertainment. *The Bail Project, Inc.*, 76 F.4th at 575 (citing *Texas v. Johnson*, 491 U.S. 397, 406 (1989); *Virginia v. Black*, 538 U.S. 343, 360-61 (2003); *W. Va. Bd. Of Educ. v. Barnette*, 319 U.S. 624, 632 (1943); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-06 (1969); *Stromberg v. California*, 283 U.S. 359, 369-70 (1931); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991)).

Here, the court is not convinced that J. Cook's mere attendance at the public meeting is inherently communicative.  As a preliminary matter, J. Cook does not allege in his Original Petition nor does he identify in his Response or his Sur-Reply any message he intended to convey by attending the meeting.  At most, J. Cook seemingly attempts to suggest that his attendance was intended to convey a message of support for the local Republican Party, as evidenced by the statements in his petition that "Republican election judges and Republican precinct chairs" spoke at the meeting, and that J. Cook himself was a member of the local Republican Party.  The meeting, however, was a public bipartisan meeting, wherein members of both the Republican and

17

the Democratic Parties attended.[3]  Additionally, J. Cook does not allege any facts suggesting that there existed a partisan divide with respect to the subject matter to be addressed at the meeting.[4] An elections administrator, by its very nature, is intended to be a non-partisan position.  *See* TEX. ELEC. CODE § 31.035 (prohibiting county elections administrators from holding an office or position in a political party); TEX. ELEC. CODE § 31.032 (providing for the appointment of a county elections administrator by a commission consisting of the county judge, the county clerk, the county tax assessor-collector, and the county chair of each political party who made nominations for the general election via primary election during the last election cycle).

Against this backdrop, the court cannot reasonably infer that J. Cook's attendance at the meeting was intended to be communicative or that it would be reasonably understood by others as being communicative.  As noted above, J. Cook fails to identify the idea or position he was trying to communicate in attending the meeting.  J. Cook's petition does not allege, for example, that the Republican Party had a specific position on whether Bush should remain the Elections Administrator for Liberty County.  Rather, J. Cook merely states that "he was attending because

---

[3] The minutes attached as Exhibit B to Dennis's Motion to Dismiss reflect that the Chairpersons for both the Liberty County Democratic Party and the Liberty County Republican Party attended the meeting as voting members.

[4] The court recognizes the local Democratic and Republican Parties may have adopted differing views with respect to whether Bush should remain the elections administrator, despite the position's non-partisan nature.  The court cannot, however, in the absence of additional facts, assume that to be the case, nor can it identify the message J. Cook intended to communicate, if any, in attending the meeting as a member of the Republican Party.

of his involvement in the local Republican Party."[5]    J. Cook cannot, however, use his mere association with a political party as an umbrella to deem all of his conduct inherently expressive, especially where he has failed to identify any idea he, or the Republican Party, intended to express. Given that the court cannot, under the facts alleged, identify whether or in what manner J. Cook intended his presence at the meeting to be expressive, it certainly cannot say that others would have reasonably viewed his attendance as being communicative. Therefore, J. Cook's conduct is not clearly protected by the First Amendment right to free speech.

Additionally, the court finds the cases cited by J. Cook in his Response and Sur-Reply unpersuasive. J. Cook first cites *Bennett v. Prosper ISD* for the proposition that attendance at public governmental meetings is inherently expressive and protected by the First Amendment. 719 F. Supp. 3d 606, 617 (E.D. Tex. 2022). In *Bennett*, a criminal trespass warning was issued to the father of a student barring him from attending School Board meetings for approximately three months after he used profanity in speaking out against the Prosper ISD School Board at previous meetings. *Id.* at 611-12. In assessing whether to grant a preliminary injunction, the court noted that the father was likely to succeed on the merits of his § 1983 Freedom of Speech claim, as the criminal trespass warning was "stunningly broad" and acted as a prior restraint that restricted him from speaking on all Prosper ISD campuses. *Id.* at 615.

*Bennett* differs significantly from the case before this court. Notably, the plaintiff in *Bennett* had clearly engaged in protected speech when he previously criticized the school board.

---

[5]J. Cook also states in his petition that Republican Election Judges and Republican Precinct Chairs spoke at the meeting. He does not, however, identify those speakers, their position with respect to the subject matter addressed at the meeting, and whether there existed a partisan divide on the issue, such that J. Cook's attendance at the meeting as a member of the Republican Party would have some communicative significance.

*Id.* (recognizing the warning prohibited plaintiff from "entering (and therefore speaking at) all Prosper ISD campus buildings and property"). The court in *Bennett* never indicates, or even suggests, that the plaintiff's attendance had any independent communicative or expressive purpose. Rather, in recognizing that barring the plaintiff from attending future meetings likely violated his First Amendment rights, the court focused only on how prohibiting his attendance would prohibit him from speaking, as the warning "entirely 'prohibit[ed] the utterance' of speech by [plaintiff] at any School Board meetings." *Id.* at 615-16. Therefore, J. Cook's assertion that *Bennett* stands for the proposition that mere attendance at a public meeting constitutes protected expression under the First Amendment is without merit.

Alternatively, J. Cook cites *Baker v. Llano County* as another instance in which a court has purportedly recognized that attendance at a public meeting is a protected form of expression. 746 F. Supp. 3d 429, 446 (W.D. Tex. 2024). In *Baker*, a public librarian was allegedly terminated due to her opposition of the Llano County Library System Director's ("System Director") attempts to censor and ban certain books within the library.[6] *Id.* at 434-35. Specifically, the plaintiff in *Baker* alleged that she was terminated for speech that included her "attending two 'Friends of the Library' meetings, attending multiple meetings of the New Library Board, and speaking to [the System Director] to complain about ongoing censorship efforts." *Id.* at 446. In reviewing the plaintiff's allegations, the court in *Baker* concluded that the plaintiff had pleaded facts sufficient to infer that she had engaged in protected speech. *Id.*

---

[6]The impetus for the censorship in *Baker* stemmed from the activity of a local group of community members who wanted to ban titles they deemed inappropriate. The System Director, however, was the individual attempting to implement the requested censorship.

20

Again, *Baker* differs markedly from the current case.  In *Baker*, there existed facts and circumstances that imbued the plaintiff's attendance at the Friends of the Library meetings with sufficient communicative value to bring such conduct within the ambit of the First Amendment.  First, before ever attending the meetings at issue in *Baker*, the plaintiff openly opposed the censorship of books in the public library.  Namely, Baker first opposed the intended censorship when she emailed the System Director suggesting that, rather than remove the requested books, librarians should counter the concerns of the community with "information on how to effectively see what their children are doing and on how to choose books." *Id.* at 434.  Subsequently, when further restrictions were imposed, the plaintiff emailed the System Director again raising concerns that they might be violating the First Amendment by removing books. *Id.* at 435.  Then, when directly requested by the System Director to remove any books that depicted sexual activity or questionable nudity, the plaintiff directly opposed the request and informed the director that, in her opinion, removing the books based on Llano County officials' disagreement with the views and contents of the books would violate the First Amendment. *Id.*

Baker also engaged in conduct following her attendance at the meetings that explicitly imparted communicative value to her attendance.  Notably, when asked about her attendance at certain meetings by a member of the library board, Baker communicated that she had attended due to her concerns about the censorship efforts of the board and its impact on her ability to access books as a Llano County resident and library patron.  Consequently, contrary to J. Cook's assertion, the court in *Baker* did not hold that mere attendance at a public meeting constitutes a protected activity.  Rather, the court recognized that the plaintiff, unlike J. Cook, alleged facts and circumstances that permitted the court to infer that her attendance at the relevant meetings was

21

intended to and perceived as communicating an idea—primarily, her disagreement with attempts to censor the library.

Based on the foregoing analysis, the court is of the opinion that J. Cook's attendance at the February 13, 2023, public meeting did not constitute expressive conduct for purposes of his First Amendment Retaliation claim.  As a result, the court cannot conclude that Dennis violated a clearly established constitutional right protected by the freedom of speech.

### 2.    Right to Petition the Government

J. Cook also asserts that Dennis violated his clearly established right to petition the government for redress by terminating him in retaliation for attending the public meeting.  The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people to petition the Government for a redress of grievances."  U.S. CONST. amend. I.  The right to petition the government is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'"  *Mirabella v. Villard*, 853 F. 3d 641, 654 (3d Cir. 2017) (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002)).  The right to petition is "essential to freedom," liberty, and self-government and contributes to the public airing of disputes, the evolution of the law, and the use of government as an alternative to force.  *Id.* (citing *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011)).  Additionally, as courts have recognized, the right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives.  *Borough of Duryea*, 564 U.S. at 388; *Villarreal v. City of Laredo*, 94 F.4th 374, 397 (5th Cir. 2024), *vacated sub nom. Villareal v. Alaniz*, 145 S. Ct. 368 (2024).

22

Here, J. Cook does not allege facts suggesting that he was petitioning the government.  As noted above, the petition does not suggest that J. Cook had a specific position on the outcome of the subject matter of the public meeting or that he was attending for the purpose of petitioning or supporting others who were petitioning for a specific result.  As noted above, the meeting was convened to determine whether to keep Bush as the Elections Administrator in light of his recent arrest.  J. Cook does not allege whether he had a position on what action he believed the commission should take with respect to Bush, nor does he state any facts suggesting that he attended for the purpose of asking the government to take any specific action or redress any particular grievances.  Accordingly, the court is of the opinion that J. Cook has failed to allege the violation of a clearly established right to petition the government in the present case.

### 3.  Right to Assemble

J. Cook also claims Dennis violated his clearly established right to assemble peaceably.  In addition to the right to free speech and to petition the government, the First Amendment also protects the right to assemble peaceably.  First Amendment assembly rights protect the "freedom and liberty to hold assemblies for lawful purposes and in a lawful manner without governmental interference."  16B C.J.S. *Constitutional Law* §§ 1134 (last updated March 2026).  Accordingly, J. Cook maintains Dennis violated his clearly established right to assemble peaceably.

This area of the law, however, is unsettled.  It is important to note that there is some authority, albeit limited, to support J. Cook's assertion that attendance at a public meeting, as a listener, may be protected.  *Tincher v. Noem*, ___ F. Supp. 3d ___, No. 0:25-cv-4669, 2026 WL 125375, at *22 (D. Minn. Jan. 16, 2026) (recognizing that there is an established right to observe peacefully police officers engaged in their official duties in public); 16B C.J.S. *Constitutional Law*

§ 1134 (last updated March 2026) (citing *Snyder v. Bd. of Trs. Of Univ. of Ill.*, 286 F. Supp. 927 (N.D. Ill. 1968) (recognizing that there is a First Amendment right to assemble peacefully and listen to the speaker of one's choice).  There is, however, conflicting authority suggesting that mere attendance or observance is not protected, especially when there is no expressive purpose associated with such assembly.  *Molina v. City of St. Louis*, 59 F.4th 334, 339 (8th Cir. 2023) (recognizing that mere observation is not expressive and is not protected by the First Amendment); *Navratil v. City of Racine*, No. 21-CV-181-SCD, 2023 WL 9190207, at *4 (E.D. Wis. Jan. 5, 2023) (holding that, though the First Amendment protects freedom of speech and the right to assemble peaceably, attendance at a rally as a mere observer without any expressive conduct is likely not protected by the First Amendment).  A helpful analysis can be found in the case of *Weise v. Casper*, wherein the Court of Appeals for the Tenth Circuit held that two silent observers did not have a clearly established right to attend a presidential speech that was open to any member of the public who could purchase tickets.  The Tenth Circuit reached this conclusion despite the fact that the attendees had been singled out and removed due to a bumper sticker on their vehicle demonstrating their opposition to the President's position, reasoning that their silent attendance at the speech was not expressive.  Similarly, given that there are no facts alleged suggesting J. Cook had any expressive purpose for attending the public meeting, and, instead, he seemingly attended merely as an observer, the court cannot conclude he had a clearly established right protected by the freedom of assembly.  Therefore, J. Cook has failed to state a claim sufficient to overcome qualified immunity based on the violation of his right to assemble peaceably.[7]

---

[7] J. Cook's contention that the Texas Open Meetings Act ("TOMA") clearly establishes his right to attend the meeting is incorrect.  TOMA is a state law, and to overcome qualified immunity, the plaintiff must demonstrate the deprivation of a federal right.  Dennis's knowledge or awareness of TOMA is

4.      Right of Association

Lastly, J. Cook asserts Dennis violated his right of association by terminating him in retaliation for associating with the members of the Republican Party at the February 13, 2023, public meeting and for associating with his wife, the Republican Party chairwoman.  "The Constitution protects the freedom of association as 'a fundamental element of personal liberty' and 'an indispensable means of preserving other individual liberties.'"  *Olympus Spa v. Armstrong*, ___F.4th ___, No. 23-4031, 2026 WL 700882, at *9 (9th Cir. Mar. 12, 2026) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984)); *see Starnes v. Butler Cnty. Court of Common Pleas*, 971 F.3d 416, 431 (3d Cir. 2020); *Kipps v. Caillier*, 205 F.3d 203, 205 (2000).  Courts have recognized two types of association that are constitutionally protected, which are the right of "intimate association" and the right of "expressive association."  *Olympus Spa*, 2026 WL 700882, at *9; *Starnes*, 971 F.3d at 431.

a.      Expressive Association

The right of expressive association protects the right to associate for "the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Olympus Spa*, 2026 WL 700882, at *9.  The protections applied to expressive association are implicated only when the group with which one associates engages in some form of expression.  *Goodpaster v. City of Indianapolis,* 736 F.3d 1060 (7th Cir. 2013).  In his Response (#14), J. Cook avers that he stated a claim for the violation of his associative rights, as he pleaded facts establishing his "political affiliations, positions[,] and

---

irrelevant to the determination of whether he violated a clearly established *federal* right.  *See Martinez v. Quinn*, No. 13-cv-00400, 2014 WL 1016042, at *5 (D. Colo. Mar. 17, 2014).

25

reasons for attending the February 2023 Elections Commission Meeting." In support of this proposition, J. Cook cites paragraphs 7, 10, and 12 of his Original Complaint (#2). Those paragraphs state the following:

> 7.     Plaintiff is married to Emily Cook, and was married to Mrs. Cook during the events underlying this complaint;
>
> . . . .
>
> 10.     Mrs. Cook was the Chairwoman of the Liberty County Republican Party; and
>
> . . . .
>
> 12.     At the relevant time, Plaintiff had been a longtime volunteer and member of the Liberty County Republican Party. Plaintiff had even served an appointed position within the Liberty County Republican Party.

Contrary to the assertion in his Response, none of the paragraphs cited by J. Cook establish or even mention his position with respect to the subject matter to be addressed at the public meeting, nor do they reference the Republican Party's position on such matters. Though the court recognizes that the Republican Party is an entity that would typically fall within the category of an expressive association, J. Cook has not alleged any facts that would allow the court to infer that J. Cook and the other attendees at the meeting were associating for an expressive purpose. J. Cook does not allege that the Republican Party had a specific position with respect to whether Bush should remain the Elections Administrator, nor can such a position be inferred from the record before the court, as the Chairwoman for the Republican Party did not vote on the matter. Accordingly, J. Cook's attendance at the meeting is not protected by the right to engage in expressive association.

Additionally, some statements in the petition suggest that J. Cook is attempting to allege Dennis terminated him simply for being a member of the local Republican Party.[8]  If this idea was more concretely alleged, the court would be inclined to agree that Dennis could not terminate J. Cook's employment simply because he was a Republican.  The issue, however, is that, in alleging the relevant constitutional violations, J. Cook specifically states, "Plaintiff was terminated because of three types of constitutionally protected activity: his attendance at a public meeting (implicating the right to peacefully assemble), and because of his association with the Republican Party Chairwoman (implicating the right to associate, and because his presence at a particular government meeting was relevant to his role within the local Republican Party (implicating the right to petition)."  Moreover, throughout his petition, J. Cook focuses only on his Republican Association insomuch as it pertains to his attendance at the public meeting.  J. Cook does not allege Dennis  retaliated against him simply for being a member of the Republican Party.  Rather, J. Cook maintains Dennis retaliated against him for the activities he supposedly undertook as a member of the Republican Party on a particular day, the significance or communicative value of which the court cannot derive from the facts contained in the current petition.  Therefore, J. Cook has failed to allege facts sufficient to demonstrate that Dennis violated his clearly established right to be a member of the Republican Party.

Additionally, there are no facts alleged anywhere in the Original Petition (#2) suggesting that Dennis opposed J. Cook's political affiliation in a manner that would have motivated him to

---

[8] In addition to his references to his Republican affiliation, J. Cook states in his petition that the adverse action he suffered would chill a person of ordinary firmness from continuing to engage in protected speech as "[i]t was well-known in the small community that Plaintiff lost his job due to the ramifications from his political associations."

27

retaliate against J. Cook for attending.[9]  For the adverse employment action to be motivated by J. Cook engaging in a protected activity, one would assume the retaliating individual must oppose, or at a minimum, intend to suppress the message expressed via that protected activity.  Here, there are no facts alleged indicating that Dennis opposed J. Cook's Republican affiliations or any message J. Cook may have intended to express via his attendance.  Accordingly, even viewing the facts in the light most favorable to the plaintiff, the court still cannot conclude Dennis violated J. Cook's right to engage in expressive association.

Alternatively, J. Cook contends that Dennis terminated him in retaliation for his association with the Republican Party Chairwoman.  J. Cook's proposition raises an interesting blend of intimate and expressive association, as he references his association with his wife, but only in her capacity as a member of a political organization.  As noted above, however, expressive association protects the right to associate "for the purpose of engaging in those activities protected by the First Amendment." *Olympus Spa*, 2026 WL 700882, at *9.  Here, the court cannot conclude that J. Cook associated with his wife for the purpose of engaging in any expressive activities.  Therefore, J. Cook's claims with respect to his association with his wife are better addressed pursuant to the right of intimate association.

b.    Intimate Association

The right of intimate association protects the "choices to enter into and maintain certain intimate human relationships." *Olympus Spa*, 2026 WL 700882, at *9 (citing *Jaycees*, 468 U.S.

---

[9]The present issue is not limited to J. Cook's freedom of association claim.  Rather, it is an issue that underlies all of J. Cook's First Amendment claims.  The court, however, did not reach the issue of whether there was a violation of J. Cook's rights with respect to his other First Amendment claims, as he failed to allege that his conduct was protected by a clearly established right.

at 617-18); *Starnes*, 971 F.3d at 431.  An intimate association is distinguished by attributes such as a "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Olympus Spa*, 2026 WL 700882, at *9 (quoting *Jaycees*, 468, U.S. at 620).  Marriage is undoubtedly an intimate association. *Lewis v. Smith*, No. 19-30689, 2022 WL 10965839, at *3 (5th Cir. Oct. 19, 2022) ("The right to marry is both a fundamental substantive due process and associational right."); *United States v. Thompson*, 896 F.3d 155, 166 (2d Cir. 2018) (recognizing that the right of intimate association includes those "personal affiliations" that "attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children and cohabitation with one's relatives").  Accordingly, J. Cook's association with his wife is protected by the First Amendment.

This conclusion alone, however, does not resolve the present dispute.  Overcoming qualified immunity requires J. Cook to demonstrate that Dennis *violated* his clearly established right to engage in intimate association with his wife.  As noted above, to establish a violation of his First Amendment right, J. Cook must allege facts demonstrating:

(1)    he engaged in protected activity;

(2)    the government took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and

(3)    the adverse action was motivated at least in part by the exercise of the protected activity.

29

*Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859-60 (8th Cir. 2024) (citing *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022)); *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

Here, J. Cook cannot establish that the adverse action was motivated at least in part by his intimate association with his wife.  In the Original Petition (#2), J. Cook states he "was married to Mrs. Cook during the events underlying this complaint."  It can be deduced from J. Cook's complaint that he was employed with Liberty County's IT Department for approximately a year and five months.  There are no facts suggesting that Dennis was unaware of the identity of J. Cook's wife or her political affiliations.  In fact, the Original Petition suggests J. Cook and Dennis had discussed his wife and children before he accepted his position with Liberty County, as Dennis allegedly used the flexibility of the hours to encourage J. Cook to join his department because it would enable J. Cook to help care for his children.  Hence, there are no facts suggesting that Dennis terminated J. Cook because of his intimate association with his wife.

Based on the foregoing analysis, J. Cook has not alleged facts sufficient to demonstrate that Dennis violated his clearly established right protected by the First Amendment.  Therefore, J. Cook has failed to state a claim that overcomes Dennis's entitlement to qualified immunity.

D.    Leave to Amend

Because J. Cook has failed to state a claim, the court must now consider his request, in the alternative, for leave to amend his Original Petition.  The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave" to amend pleadings "when justice so requires."  FED. R. CIV. P. 15(a)(2); *accord BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025);

*Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020); *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 740 (5th Cir. 2019); *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018). The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. *DeGruy v. Wade*, 586 F. App'x 652, 655 (5th Cir. 2014) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)); *Tex. Indigenous Council v. Simpkins,* 544 F. App'x 418, 421 (5th Cir. 2013); *Johnson v. Epps*, 479 F. App'x 583, 588 (5th Cir. 2012); *Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 389 F. Supp. 3d 412, 418 (M.D. La. 2019). The language of Rule 15(a) "evinces a bias in favor of granting leave to amend." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (quoting *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2017)); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018); *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 944 (5th Cir. 2018). Moreover, "Rule 15(a) applies where plaintiffs 'expressly requested' to amend even though their request 'was not contained in a properly captioned motion paper.'" *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)). "A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought." *Id.*

Leave to amend, however, is by no means automatic. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 391 (5th Cir. 2017); *Bridge Assoc. L.L.C.*, 561 F.3d at 391; *Newby v. Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). While leave to amend should be freely given, that

31

generous standard is tempered by the necessary power of a district court to manage a case.  *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013); *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008); *Fin. Acquisition Partners LP*, 440 F.3d at 291.  Thus, granting leave to amend a pleading is within the sound discretion of the trial court, although if the court "lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial." *McGee v. Citi Mortg., Inc.*, 680 F. App'x 287, 291 (5th Cir. 2017); *see Benson v. St. Joseph Reg'l Health Ctr.*, 575 F.3d 542, 550 (5th Cir. 2009); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

Although "[t]he court should freely give leave when justice so requires" under Rule 15(a), the Fifth Circuit has observed that this "is not a mechanical absolute and the circumstances and terms upon which such leave is to be 'freely given' is committed to the informed, careful judgment and discretion of the Trial Judge as he superintends the development of a cause toward its ultimate disposition." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 468 (5th Cir. 1967) (quoting *Lone Star Motor Imp., Inc. v. Citroen Cars Corp.*, 288 F.2d 69, 75 (5th Cir. 1961)); *accord Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, ___F.4th___, No. 24-20275, 2026 WL 507787, at *3 (5th Cir. Feb. 24, 2026) ("Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case."); *Body by Cook, Inc.*, 869 F.3d at 391.  Considerations aiding in this determination include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Farmers Tex. Cnty. Mut. Ins. Co.*, 2026 WL 507787, at *3; *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 302-03 (5th

Cir. 2022) (quoting *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021)); *Body by Cook, Inc.*, 869 F.3d at 391 (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)); *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 419 (5th Cir. 2010); *Bridge Assoc. L.L.C.*, 561 F.3d at 391. If any one of these factors applies, leave may be withheld. *Rosenblatt*, 607 F.3d at 419; *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (explaining, conversely, that "[a]bsent any of these factors, the leave should be 'freely given'" (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

Here, Dennis does not assert, nor is there any evidence to suggest, that J. Cook engaged in undue delay or bad faith, or that allowing him to amend his pleadings would result in undue prejudice. Rather, Dennis simply states that he "opposes Plaintiff's request to amend the pleadings as an alternative basis for relief," because "[n]o amendment would cure the defects." Consequently, the court need only address futility.

When an "amendment would be futile" under Rule 15(a), the district court is authorized to deny a motion for leave to amend. *Foster v. Jesel*, 164 F.4th 401, 404 (5th Cir. 2026) (citing *Doe 1 v. City View Indep. Sch. Dist.*, 150 F.4th 668 (5th Cir. 2025) (per curiam)); *Martinez v. Neuces County*, 71 F.4th 385, 391 (5th Cir. 2023). In determining whether an amendment would be futile, the court relies upon the same standard of legal sufficiency that applies under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Martinez*, 71 F.4th at 391; *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018); *Marucci Sports, L.L.C.*, 751 F.3d at 378; *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 369 (5th Cir. 2010); *Landavazo v. Toro Co.*, 301 F. App'x 333, 337 (5th Cir. 2008); *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003). Accordingly, the court will view a proposed amendment as futile if "the amended complaint would fail to state

33

a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000).

In requesting leave to amend, J. Cook states his amended complaint would "show that he engaged in active, nonverbal activity during the Elections Commission Meeting in support of several speakers during the public comment period." Additionally, J. Cook states that his amendment will include facts demonstrating that "Bush was the former vice-chairman of the local Republican Party, a Republican election judge, and a Republican-appointed member of the early voting ballot board." Though the court cannot say with certainty that the amendment will cure the current petition's deficiencies without seeing the amended pleading or knowing the specific conduct in which he participated, the court can certainly envision facts that may move J. Cook's claims from the murky territory in which it currently rests to the realm of a violation of a clearly established constitutional right.

Additionally, allowing J. Cook to amend will provide him with the opportunity to clarify his pleadings with respect to whether Dennis opposed J. Cook's position on the subject matter to be addressed at the public meeting. In amending his complaint, J. Cook will also be able to address whether he is alleging that the motivation for Dennis's retaliation is limited to the position J. Cook adopted at the meeting, or whether it encompasses J. Cook's status as a member of the Republican Party generally. Therefore, the court is of the opinion that J. Cook's Motion for Leave to Amend contained in his Response (#14) should be granted.

III.    Conclusion

Accordingly, Dennis's Motion to Dismiss (#8) is conditionally GRANTED, subject to J. Cook's filing an amended complaint on or before April 10, 2026.  In the event J. Cook fails to file an amended petition before the aforementioned deadline, the present action will be subject to dismissal with prejudice.  If, however, J. Cook timely files an amended complaint, Dennis may file a new motion to dismiss on or before May 1, 2026.

SIGNED at Beaumont, Texas, this 27th day of March, 2026.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE
